UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

ORANGE DESTIN PROPERTIES, LLC,

                Plaintiff,

v.                                        CASE NO.: 3:23-cv-00424

DAVID J. DISIERE,

                Defendant.

_____/

## **PLAINTIFF'S POST-SUMMARY JUDGMENT BRIEF AND INCOPORATED MEMORANDUM OF LAW**

Plaintiff, ORANGE DESTIN PROPERTIES, LLC, by and through its undersigned counsel, and pursuant to the Court's mandate in its Order Denying Motion for Summary Judgment and Setting Briefing Schedule [Doc. 31], hereby files its brief addressing the three (3) issues raised by the Court: (1) whether Florida law permits oral modifications to land sale contracts; (2) whether the rule set out in *Bilow, Bell*, and *Henry* remain good law following *Castigliano* or whether, as *Castigliano's* second factor suggests, a seller of real estate may have an adequate remedy at law when the buyer breaches; and (3) whether, pursuant to *Celano* and the hierarchy of authority in Florida courts, this Court must apply the "contract only" rule, as well as the arguments articulated in Defendant's Post-Summary Judgment Brief [Doc. 33].

## ARGUMENT

**I.    Whether Florida law permits oral modifications to land sale contracts. In particular, the parties should address the applicability of any exceptions to the Statute of Frauds assuming the Statute of Frauds applies.**

### A.    Land Sales Contracts In Florida Are Subject To The Statute Of Frauds

In the instant case, it is undisputed that the Parties entered into a Vacant Land Contract (the "Contract") for the sale and purchase of Plaintiff's gulf-front lot located at 8 Stallworth Blvd., Santa Rosa Beach, Florida (the "Property") [Doc. 1-1, P.3, ¶6 and Doc. 3, P.1, ¶6].  A copy of the Contract was attached to the Complaint as Exhibit "A" [Doc. 1-1, Pp. 10-24].  The Contract was the standard form Florida Realtors® Vacant Land Contract.  The Contract provided in relevant part in Section 15 that:

> This Contract is the entire Agreement between Seller and Buyer. Except for brokerage agreements, no prior or present agreements will bind Seller, Buyer, or Broker unless incorporated into this Contract. Modifications of this Contract will not be binding unless in writing, signed or initialed, and delivered by the party to be bound…

[Doc. 1-1, P. 18].  Section 15 of the Contract is consistent with the Statute of Frauds contained in Fla. Stat. §725.01 which provides in relevant part that:

> No action shall be brought…upon any contract for the sale of lands, tenements or hereditaments, or any uncertain interest in or concerning them…unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith…

*See also, DK Arena, Inc. v. EB Acquisitions, LLC*, 112 So. 3d 85, 86 (Fla. 2013)("Florida Statute of Frauds provides that all contracts for the sale of land must be memorialized in a written document signed by the parties to the contract or their lawful representatives." citing Fla. Stat. §725.01) and *Swisher v. Conrad*, 76 Fla. 644, 646 (Fla. 1919)('Our statute of frauds requires that where there is a contract for the sale of lands "the agreement or promise***or some note or memorandum thereof, shall be in writing."').

Therefore, it is well settled that sales contracts in the state of Florida are subject to the Statute of Frauds.

**B.      Exceptions To The Statute Of Frauds**

**1.      Promissory Estoppel Is Not An Exception To The Statute Of Frauds**

Despite the clear and unambiguous mandate of Fla. Stat. §725.01 and the subject Contract itself, that modifications of the Contract must be in writing and signed and delivered, the Defendant contends that the Contract was terminated when he told his real estate agent that he wanted to terminate the Contract [Doc. 26-1, P. 2, ¶10, see also Doc. 22-9, P. 59[1], lines 13-16].  Defendant further raised that the "Contract was properly terminated" as Affirmative Defense No. 2 [Doc. 3, P. 3, ¶2].

---

[1] The page number referred to is the page number assigned by the ECF system and not the page number of the deposition transcript.  In this case, the ECF system identifies this page of Doc. 22-9 as page 59 of 128 however in the corner of the transcript is page 58.

In Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law ("MSJ"), the Plaintiff refuted the argument that the Contract could be orally terminated, concluding that the "Contract was not terminated by a writing signed by both parties." [Doc. 22, Pp. 15-16].

In response to this argument in the MSJ, Defendant argued that:

Under Florida law, a written contract may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such a manner that as would work a fraud on either party to refuse to enforce it. *Cost Recovery Servs. LLC v. Windstream Corp.*, No. 1:02-cv-00131-MP-AK, 2010 WL 11515513 at *1 (N.D. Fla. May 3, 2010).

[Doc. 26, P. 24]. The Florida Supreme Court recognized such a rule in *Professional Ins. Corp. v. Cahill*, 90 So. 2d 916, 918 (Fla. 1956). This rule is based on the doctrine of promissory estoppel, whose elements are set out in section 90 of the *Restatement (Second) of Contracts §90*, as:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*See W.R. Grace and Co. v. Geodata Serv., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)(adopting the Restatement definition of promissory estoppel).

However, *Cahill* was not dealing with a contract for the sale of land and instead dealt with an employment agreement. As detailed in Plaintiff's Reply Memorandum to Defendant's Response in Opposition to Plaintiff's Motion for

Summary Judgment [Doc. 27]("Reply"), it is well settled in Florida that a written contract falling within the Statute of Frauds cannot be orally modified through the operation of promissory estoppel [Doc. 27 at Pp.11-12].  In the Reply, Plaintiff cited to the Florida Supreme Court case of *DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85 (Fla. 2013) which reiterated the above rule as announced in *Tanenbaum v. Biscayne Osteopathic Hospital, Inc.*, 190 So. 2d 77 (Fla. 1966).

Therefore, it is well settled in Florida that promissory estoppel may not be used to circumvent the Statute of Frauds.

Plaintiff would be remise to not address the Defendant's argument that this Court can apply *Cahill* to this case as "Plaintiff abandoned the statue of frauds defense by failing to assert it in its motion for summary judgment, or in an earlier pleading." [Doc. 33 at P. 6].  Initially, the Plaintiff filed the Complaint in this action and therefore, would not be the party obligated to raise defenses.  Additionally, Defendant argues that statute of frauds defense can be waived or abandoned by failing to plead the statute of frauds in avoidance of Defendant's affirmative defense, citing *Foilage Corp. of Fla. v. Watson*, 381 So. 3d 356 (Fla. 5th DCA 1980) [Doc. 33 at P. 7].  However, *Foilage Corp.* is inapplicable to the instant case.  In *Foilage Corp.*, the Florida Fifth DCA stated that "[u]nder the Florida Rules of Civil Procedure a plaintiff who seeks to avoid an affirmative defense is required to file a reply containing the avoidance.  By failing to plead the statute of frauds in avoidance

of defendant's affirmative defense of settlement, plaintiffs waived their right to raise it." *Id*. at 359. Fla. R. Civ. P. 1.110(a) does provide in relevant part that "[i]f an answer or third-party answer contains an affirmative defense and the opposing party seeks to avoid it, the opposing party must file a reply containing the avoidance." However, Defendant removed this case to Federal Court [Doc. 1], prior to him filing Defendant's Answer and Affirmative Defenses ("Answer")[Doc. 3]. Pursuant to Fed. R. Civ. P. 7(a)(7), a reply to an answer is only allowed if the court orders such a reply. Therefore, it would be impermissible for Plaintiff to have filed a reply to the Answer to avoid the defense. Further, pursuant to Fed. R. Civ. P. 8(b)(6), if a responsive pleading is not required, as is the case here regarding the Answer, an allegation is considered denied or avoided.

Regardless, this Court has specifically asked the parties to brief the issue of whether Florida law permits oral modifications to land sales contracts [Doc. 31 at P. 7]. Therefore, it is proper to discuss the Statute of Frauds. Clearly, *Cahill* is inapplicable to this action dealing with a land sales contract based on the precedent laid down by the Florida Supreme Court in *Tanenbaum* and *DK Arena.*

## 2.   Waiver Is An Exception To Statute Of Frauds, However It Is Not Present In This Action

In Defendant's Post-Summary Judgment Brief [Doc. 33 at P. 2], Defendant quotes the Florida Supreme Court case of *Gilman v. Butzloff*, 155 Fla. 88, 22 So. 2d 263 (Fla. 1945) for the proposition that "[a] party may waive any right to which he

is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution. This is not in conflict with the rule that the terms of a seal contract cannot be changed by parol." Defendant also cited *DK Arena*, where the Florida Supreme Court also recognized that waiver has been used in the context of the Statute of Frauds to excuse untimely performance [Doc. 33, Pp. 2-3]. Based on those cases, Plaintiff agrees that waiver is an exception to the Statute of Frauds.

However, Plaintiff vehemently disagrees with the Defendant's argument that Plaintiff "waived the need to terminate the contract in writing by accepting Defendant's oral termination." [Doc. 33 at Pp. 2-5]. It is well settled that waiver is the intentional or voluntary relinquishment of a known right, or conduct which infers the relinquishment of a known right. *Thomas N. Carlton Estate v. Keller*, 52 So. 2d 131, 133 (Fla. 1951). "The essential elements of waiver are (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Taylor v. Kenco Chem. & Mfg. Corp*. 465 So. 2d 581, 587 (Fla. 1st DCA 1985) citing *Gulf Life Insurance Company v. Green*, 80 So. 2d 321 (Fla. 1955) and *Gilman*.

In the instant action, Defendant contends that the "Contract also provided the buyer the opportunity to terminate." [Doc. 33 at P. 4]. This statement is not entirely correct. The Contract itself [Doc. 22-3] does not contain a specific "termination"

provision. The Contract also has no contingencies as Defendant selected that he would pay cash for the Property with no financing contingency [Doc. 22-3 at P.2, section 6(a)] and elected to not have a due diligence period [Doc. 22-3 at P.4, Section 9(a)(2)]. In an e-mail exchange between him and his real estate agent, Agnes Topp ("Topp"), Defendant acknowledged that the Contract contained no contingencies [Doc. 22-7, P. 1].

What the Contract does contain is a "default" provision in Section 16, which provides in relevant part that:

> (b) **Buyer Default**: If Buyer fails, neglects, or refuses to perform Buyer's obligations under this Contract, including payment of deposit(s), within the time(s) specified, Seller may elect to recover and retain the deposit(s), paid and agreed to be paid, for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Seller and Buyer will be relieved from all further obligations under this Contract; or Seller, at Seller's option, may proceed in equity to enforce Seller's rights under this Contract.

[Doc. 22-3 at P. 6, section 16(b)]. Based on Defendant's e-mail exchange with Topp [Doc. 22-7, P. 1], it appears that Defendant understood that he would be in default under the Contract by failing to close on the Property. This is bolstered by Defendant's Declaration in which he stated, under penalty of perjury, that he understood he would forfeit his deposit if he did not proceed to close on the Property [Doc. 26-1, P. 2, ¶¶9-11].

Further, Topp testified that in her schooling and examination to become a licensed real estate professional, she understood that in order to cancel a written contract for the purchase of real estate there needed to be a written document signed by both the buyer and seller [Doc. 22-8, P.56, line 22 to P. 57, line 4]. Topp further testified numerous times that she prepared a written cancellation agreement that was presented to Plaintiff through his real estate agent, but the cancellation agreement was never returned [Doc. 22-8, P. 50, lines 4-10, P.52, lines 1-7, and P. 57, lines 3-4] . Additionally, Topp testified that she informed Defendant that he would need to close on the property, despite his desire to cancel the transaction [Doc. 22-8, P. 57, lines 13-20]. Further, Topp acknowledged that she nor Plaintiff's real estate agent, John D'Amico ("D'Amico") would have any authority to agree to cancel the Contract. Instead, the buyer [Defendant] and seller [Plaintiff] would need to agree [Doc. 22-8, P. 48, line 16 – P. 49, line 11]. *See also, Holmberg v. Queck*, 90 Fla. 437, 440 (Fla. 1925)("The rule seems to be well settled in this and other jurisdictions that a real estate agent or broker in whose hands an owner places land for sale does not thereby acquire authority to bind his principal by signing an agreement of sale. The agent has no righ to conclude and execute a binding contract unless such power is expressly conferred by the use of unequivocal language to that effect.").

Defendant contends that "Plaintiff understood and accepted this cancelation where the Plaintiff, through its agent, communicated reduced prices to persuade

Disiere to re-think the termination and close on the property." [Doc. 33 at P. 4]. This contention is also factually false. Defendant's real estate agent, Topp, testified that she never received a reduced-price offer from Plaintiff nor his real estate agent, D'Amico [Doc. 22-8, P. 55, line 9 – P. 56, line 6]. Topp further testified that both her and D'Amico would have liked for the Contract to close as it would need to close for them to receive real estate commissions [Doc. 22-8, P. 53, line 25 – P. 54, line 7].

Additionally, the conduct of Plaintiff does not show any intention by him to waive any of his rights under the Contract. Marc Jones ("Jones"), the manager member of Plaintiff, testified that he never authorized D'Amico to make a different offer or price reduction to Defendant [Doc. 22-1, P. 69, line 15 – P. 70, line 11]. Jones executed all closing documents necessary to convey the property to Defendant [Doc. 22-1, P.80, lines 6-9]. This was confirmed by Shannon Widman ("Widman") of Porath & Associates, P.A., the escrow agent identified in the Contract [Doc. 22-3, P. 1, line 16], who testified that Porath & Associates, P.A. received Plaintiff's signed and completed closing documents [Doc. 22-2, P. 23, lines 2-17]. After Defendant refused to close on the Property on the closing date of August 15, 2022, Plaintiff, through its undersigned counsel, notified Defendant of his default for failing to close and provided Defendant with ten (10) days to cure the default [Doc. 1-1, P. 3, ¶13 and Doc. 1-1, P. 31]. Defendant admitted that he received the notice of default and did not close on the Property within ten (10) days of receipt of the

notice [Doc. 3, P. 2, ¶¶13-14]. After Defendant's failure to comply with the demand, Plaintiff filed suit in Walton County Case No. 22-CC-433 on October 20, 2022, which was later removed to this Court on January 11, 2023 [Doc. 1 and 1-1].

Quite simply, the Plaintiff never accepted any oral termination of the Contract. The Plaintiff continued to treat the Contract as effective by performing its duties under the Contract and signing any necessary closing documents. The Plaintiff also insisted that Defendant close on the Property. Therefore, there is no indication of any waiver by Plaintiff of its contractual rights, therefore the waiver exception to the Statute of Frauds is not present in this action.

II.    **Whether the rule set out in *Bilow*, *Bell*, and *Henry* remains good law following *Castigliano* or Whether as *Castigliano's* second factor suggests, a seller of real estate may have an adequate remedy at law when the buyer breaches.**

A.    ***Bilow*, *Bell* And *Henry* Are Still Good Law And Were Not Abrogated By *Castigliano***

In the Order Denying Motion for Summary Judgment and Setting Briefing Schedule [Doc. 31], the Court stated that "Plaintiff argues that an adequate remedy at law can never exist for a breached land sale contract because real property is considered unique [Doc. 31 at P. 7]. However, Plaintiff did not raise the argument in Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law ("MSJ")[Doc. 22] that an adequate remedy at law can "never" exist. Instead, Plaintiff specifically argued that "it is well-settled under Florida law that specific

performance of a contract ***is available*** to a seller of real property as each real property is considered unique." [***Emphasis added***].  In making this argument, Plaintiff cited the cases of *Bell v. Alsip*, 435 So. 2d 840 (Fla. 4th DCA 1983), *Bilow v. Benoit*, 519 So. 2d 1114 (Fla. 1st DCA 1988) and *Henry v. Ecker*, 415 So. 2d 137 (Fla. 5th DCA 1982).

In *Bell*, Florida's Fourth DCA reserved a final judgment denying the seller of real estate specific performance under a contract for sale of the real property when the Buyer breached the contract.  In reversing the final judgment and remanding the cause for entry of a judgment granting the seller specific performance, the Fourth DCA stated:

> It having been determined that the buyer breached the contract, the remaining issue is whether the sellers were entitled to specific performance.  They clearly have such right.  Real estate is unique.  Ownership of real estate is at the same time an asset and a liability.  Money damages upon breach of a purchase and sale agreement adequately compensates neither a seller, burdened with ownership, nor a buyer, deprived of ownership and possession.  Specific performance is uniquely capable of rectifying the breach of such a contract.

*Bell*, 435 So. 2d at 842.

In *Bilow*, Florida's First DCA reversed a judgment denying a prayer for specific performance of a contract for the sale of real property.  The contract for the sale of real property in *Bilow* provided:

> If Buyer fails to perform this contract within the time specified, (including payment of all deposits hereunder), the deposit(s) paid by the Buyer may be retained by or for the account of Seller as liquidated

damages, consideration for the execution of this Contract and in full settlement of any claims; whereupon Buyer and Seller shall be relieved of all obligations under the Contract; or Seller, at Seller's option, *may proceed at law or in equity to enforce Seller's legal rights* under this Contract.

[*Emphasis added*].  *Bilow*, 519 So. 2d at 1117.  The First DCA, after citing the contract language above stated that "[t]his provision gave Bilow the alternative right to accept the deposit as liquidated damages or to enforce the contract in an action for specific performance or damages should Benoit fail to perform his part of the bargain." *Id*.  *Bilow* then cited *Henry* in a footnote, after the above quoted language, for the proposition that "[b]ecause real property is considered unique, a seller of real property *is entitled to seek specific performance* of the contract of sale." [*Emphasis added*]. *Id*.

Therefore, those cases stand for the proposition that a seller of real property may seek specific performance of a real estate contract.  Such proposition is consistent with the express language of the Contract in the instant action, which provides:

> (b)  **Buyer Default**:  If Buyer fails, neglects, or refuses to perform Buyer's obligations under this Contract, including payment of deposit(s), within the time(s) specified, *Seller may elect to recover and retain the deposit(s), paid and agreed to be paid, for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims*, whereupon Seller and Buyer will be relieved from all further obligations under this Contract; *or Seller, at Seller's option, may proceed in equity to enforce Seller's rights under this Contract*.

[***Emphasis added***][Doc. 22-3 at P. 6, section 16(b)]. Similar to the contract in *Bilow*, the subject Contract provides the alternative right to accept the deposit as liquidated damages or to enforce the contract in an action for specific performance. However, the subject Contract is more narrow as it does not provide for the alternative remedy of proceeding at law to seek damages, as was available under the contract in *Bilow*.

The case of *Castigliano v. O'Connor*, 911 So. 2d 145 (Fla. 3d DCA 2005) did not abrogate the right of a seller to seek specific performance as discussed in *Bell* or *Bilow*, nor did it address the proposition from *Henry* that all real property is unique. Instead, *Castigliano*, dealt with a buyer's prayer for specific performance of a real estate contract, when the seller was unable to clear some fraudulent mortgages off of his property. Florida's Third DCA in *Castigliano*, cited a Pennsylvania Supreme Court case in stating that "[s]pecific performance shall only be granted when 1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *Castigliano*, 911 So. 2d at 148.

However, *Castigliano* did not discuss further whether an adequate remedy at law existed. Instead, the decision to reverse an order granting specific performance to the buyer, was based on the failure of the buyer to show by clear, definite and certain proof that the seller failed to exercise reasonable diligence in clearing the title defects. *Id*.

Based on the foregoing, *Bell*, *Bilow,* and *Henry* are still good law and were not abrogated by *Castigliano*.  As conceded by Defendant in Defendant's Post-Summary Judgment Brief ("Brief"), "under a fair reading, *Bilow*, *Bell*, and *Henry* can be reconciled with case law requiring a non-breaching party to a land sale contract to provide that it lacks an adequate legal remedy." [Doc. 33 at P. 10].

## B.    Plaintiff Has Alleged That It Has No Adequate Remedy At Law

As detailed above, the subject Contract provides the Plaintiff [Seller] two options upon a default by the Defendant [Buyer]: (1) "Seller may elect to recover and retain the deposit(s), paid and agreed to be paid, for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims" or (2) "Seller, at Seller's option, may proceed in equity to enforce Seller's rights under this Contract."  [Doc. 22-3 at P. 6, section 16(b)].  There is no option under the Contract for Plaintiff to seek damages at law.

In the underlying Complaint, Plaintiff alleges as a result of Defendant's default under the Contract it is electing to proceed in equity to enforce its rights under the Contract [Doc. 1-1 at P. 5, ¶19].  Plaintiff further alleged that the earnest money deposit would not adequately compensate it for the Defendant's default under the Contract [Doc. 1-1 at P.5, ¶22].  Therefore, Plaintiff, in seeking specific performance of the Contract, has alleged that it has no adequate remedy at law and is proceeding under its available option under the Contract.

In its Brief, Defendant concedes that the second element articulated in Castigliano, lack of an adequate remedy at law, "may be satisfied where the party pleads and proves that it lacks an adequate remedy at law because the subject of the contract is land, which is unique [Doc. 33 at P. 10-11]. In doing so, Defendant cites *Lennar Homes, Inc. v. Dorta-Duque*, 972 So. 2d 872 (Fla. 3d DCA 2007), another Third DCA case decided two years after *Castigliano* and which does not mention *Castigliano*. In *Lennar Homes*, the Third DCA adopted the trial court's findings and conclusions, which found that Dorta-Duque did not have an adequate remedy at law and cited *Bell* for the proposition that real estate is unique. *Lennar Homes*, 972 So. 2d at 880-881.

Defendant, cited three cases in Florida where specific performance was denied because it was determined that an adequate remedy at law existed in the form of money damages for breach of contract. However, those cases are factually distinguishable as the contracts or agreements in those actions did not limit remedies as is the case with the subject Contract discussed above. In *DiMauro v. Martin*, 359 So. 3d 3 (Fla. 4th DCA 2023), the Fourth DCA, in affirming a denial of specific performance, expressly found that "the operating agreement does not limit the parties' remedies. As such DiMauro has an adequate remedy at law in money damages for breach of contract." *Id*. at 9.

Similarly, in *Bird Lakes Dev. Corp. v. Meruelo*, 626 So. 2d 234 (Fla. 3d DCA 1993), a judgment granting monetary damages and denying specific performance was affirmed finding that "Meruelo was adequately compensated for the breach by damages at law, including loss of bargain damages for all the sites that were the subject of the contract." *Id*. at 238.

The *Bird Lakes Dev. Corp*. case cited *Blue Lakes Apartments, Ltd. v. George Growing, Inc*., 464 So. 2d 705 (Fla. 4th DCA 1985), which was also cited by Defendant in its Brief [Doc. 33 at P. 12]. In *Blue Lakes Apartments*, the contract specifically provided that "Neither party shall have the right of specific performance." *Id.* at 707. George Growing, Inc., the buyer, sued the seller for specific performance, compensatory and punitive damages for breach of the contract to sell a condominium unit. The seller did not raise the contract provision that specific performance was not available as an affirmative defense. *Id*. at 707, n.2. Regardless, the judgment awarding compensatory damages instead of specific performance was affirmed in favor of the buyer finding that "[u]nder the facts of this case, compensatory damages appropriately included 'loss of [the buyer's] bargain, which is the difference between the value of the property [at the time of breach] and the contract price.'" quoting *Wolofsky v. Behrman*, 454 So. 614, 615 (Fla. 4th DCA 1984). *Bird Lakes Apartments*, 464 So. 2d at 709.

Defendant argues that Plaintiff alleged, and therefore admitted, that there is an adequate remedy at law available [Doc. 33 at P. 12-13]. Defendant further argues that the adequacy of a legal remedy is contingent on the value of the Property at the time at the time of the breach citing to paragraph 22 of the Complaint [Doc. 1.1, P. 5, ¶22]. However, the specific allegation in paragraph 22 is "that money damages would not adequately compensate Plaintiff." *Id*. Since Plaintiff alleged that money damages, which as detailed above are not available under the Contract terms, would be an inadequate remedy, the cases of *Balian v. Wekiwa Ranch*, 97 Fla. 180, 185, 122 So. 559, 561 (Fla. 1929)("prayer upon a breach of contract by somebody resulting in damages to complainant for which he has an adequate remedy at law." ) and *Mack Roth, Inc. v. Gardiner*, 96 Fla. 691, 696, 118 So. 728, 729 (Fla. 1928)("A bill of complaint which shows on its face that the complainant has an adequate remedy at law is not good against a demurrer.") are inapplicable. Regardless, Defendant concedes that "Defendant does NOT argue, that standing alone, Plaintiff's contractual right to retain the deposit in the event of a breach by Defendant constitutes an adequate legal remedy to prohibit specific performance." [Doc. 33 at P. 20].

Based on the foregoing, Plaintiff has properly sought specific performance under the subject contract as monetary damages at law are precluded by the express terms of the subject Contract. Plaintiff has alleged that a retention of the earnest

money deposit as liquidated damages is not an adequate remedy and has elected to pursue specific performance.

**III.    Whether, pursuant to *Celano* and the hierarchy of authority in Florida Courts, this Court must apply the "contract only" rule.**

In Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law ("MSJ Response")[Doc. 26], Defendant argued that to establish entitlement to specific performance, Plaintiff first must prove a breach of contract claim [Doc. 26 at P. 8].  Defendant then quoted *Unatin v. Hudon*, 383 So. 2d 1131, 1132 (Fla. 5th DCA 1980), stating that "[i]n a suit for specific performance of a contract for the sale of realty, the plaintiff must do more than prove his case by a preponderance of the evidence; he is required to prove *his case* by competent and satisfactory proof which must be clear, definite and certain."  [***Emphasis added***].  As pointed out in Plaintiff's Reply, the Unatin case was an attempt to enforce an unexecuted lease via specific performance [Doc. 27 at P. 4].  The *Unatin* case cited *Hi-Acres Groves, Inc. v. Pope Bassett*, 338 So. 2d 1076 (Fla. 4th DCA 1976) which stated that:

> The rule in Florida is well established that in a suit for specific performance of a contract for the sale of realty the plaintiff must do more than prove his case by a preponderance of the evidence; he must ***prove his case*** by competent and satisfactory proof which must be clear, definite, and certain.

[***Emphasis added***].  Therefore, *Unatin* and *Hi-Acres* appear to follow the "entire case" rule, that the entire case must be proved by competent and satisfactory proof

that must be clear, definite and certain. However, *Hi-Acres Groves* cites the Florida Supreme Court case of *Miller v. Murray*, 68 So. 2d 594 (Fla. 1953) for the above proposition. In *Miller,* the Florida Supreme Court was hearing an appeal of a decree denying specific performance of an alleged oral contract to convey real estate. The Florida Supreme Court stated that:

> In this jurisdiction the rule is settled beyond question "that in a suit for specific performance of an alleged contract for the sale of real estate the plaintiff must do more than merely prove his case by a preponderance of the evidence \*\*\* **he must prove the contract as alleged** in his complaint by competent and satisfactory proof which must be clear, definite and certain. See *Maloy v. Boyett*, 53 Fla. 956, 43 So. 243; *Williams v. Bailey*, 69 Fla. 225, 67 So. 877; *Rundel v. Gordon*, 92 Fla. 1110, 111 So. 386; *Alexander [\*\*4] v. Bess*, 123 Fla. 713, 167 So. 553; *White v. Cohn*, 137 Fla. 501, 188 So. 581."

[***Emphasis added***]. A reading of those cases reveals that *Maloy*, *Williams*, and *Alexander* dealt with oral or parol contracts. The *Rundel* case had a written contract that was found not to contain all essential terms. Further, the *White* case does not discuss a burden of proof for the party seeking specific performance. Instead, it stated that the "application for an order of specific performance of a contract for the sale of real estate is addressed to the sound discretion of the Chancellor and this Court will not interfere therewith unless it clearly appears that the Chancellor erred." *White*, 137 Fla. at 505. Thus, these cases, as well as *Miller* appear to be "contract only" rule cases, wherein the contract must be proved by competent and satisfactory proof which must be clear, definite and certain.

Similarly, the First DCA case of *Celano v. Dlabal*, 591 So. 2d 653 (Fla. 1st DCA 1991) is also a "contract only" rule case, stating:

> To obtain specific performance of an oral contract to convey real estate, the party seeking specific performance ***must first establish the oral contract by clear, definite and certain proof***; a preponderance of the evidence is not sufficient.

[***Emphasis added***].  *Celano* cites *Miller*, *Unatin* and *Hi-Acres Grove* for such a proposition, but appears to not go as far as *Unatin* and *Hi-Acres* in stating an "entire case" rule and instead follows *Miller* regarding the proof necessary to establish a contract by clear, definite and certain proof.  *Celano* is silent as to the burden of proof for other elements of a specific performance claim.

The undersigned has not been able to locate a First DCA, Florida Supreme Court, or United States Eleventh Circuit case that discusses the burden of proof and differentiates between the "contract only" or "entire case" rule.   The closest case found dealt instead with the UCC and stated that "[o]ral contracts outside the UCC must be proved by more than a preponderance.  The test is "clear, full and free from suspicion."  The test for contracts that fall within the UCC is simply a preponderance of evidence…" *Tipton v. Woodbury*, 616 F.2d 170, 176 (5th Cir. 1980)(internal citations omitted).

Regardless, *Celano* was decided subsequent to *Unatin* and *Hi-Acres Grove* and is a "contract only" case that follows prior Florida Supreme Court precedent. Therefore, this Court should apply the "contract only" rule discussed in *Celano*

based on the hierarchy of authority discussed in *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 n.5 (11th Cir. 2000).

## CONCLUSION

In summary, the Statute of Frauds prevents an oral modification of a land sales contract in Florida. While waiver is a permitted exception to the Statute of Frauds, waiver is not present in the instant action as there is evidence that the Plaintiff accepted the termination and all actions of Plaintiff in signing necessary closing documents and making a demand for Defendant to close show its intention to honor the Contract. Conversely, the Defendant telling his real estate agent that he will not go through with the purchase was not a proper termination. Furhter, the actions of Defendant in signing a cancellation agreement and his real estate agent telling him he needed to close the transaction are not consistent with Defendant's position that the Contract was properly terminated.

Additionally, *Bilow*, *Bell* and *Henry* are still good law and were not abrogated by *Castigliano*. Regardless, Plaintiff has plead that it does not have an adequate remedy at law and the subject Contract precludes seeking monetary damages at law.

Finally, the Court should apply the "contract only" rule discussed in *Celano* as the current precedent in Florida's First DCA.

DUNLAP & SHIPMAN, P.A.
/s/ Michael J. Henry
GARY A. SHIPMAN (FBN 593435)
MICHAEL J. HENRY (FBN 0069044)
2063 S. County Hwy. 395
Santa Rosa Beach, FL 32459
Telephone: (850) 231-3315
Facsimile: (850) 231-5816
gary@dunlapshipman.com
michael@dunlapshipman.com
carrie@dunlapshipman.com
Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH RULE 7.1(F)

I HEREBY CERTIFY that the Reply Memorandum contains 5,660 words and is in compliance with Rule 7.1 (F).

DUNLAP & SHIPMAN, P.A.
/s/ Michael J. Henry
MICHAEL J. HENRY (FBN 0069044)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of March, 2024, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system.

DUNLAP & SHIPMAN, P.A.
/s/ Michael J. Henry
MICHAEL J. HENRY (FBN 0069044)