UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

ORANGE DESTIN PROPERTIES, LLC,

                Plaintiff,

v.                                    CASE NO.: 3:23-cv-00424

DAVID J. DISIERE,

                Defendant.

_____/

## PLAINTIFF'S POST-BENCH TRIAL BRIEF AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Orange Destin Properties, LLC ("Plaintiff" or "Orange Destin"), by and through its undersigned counsel and pursuant to the requirements of the Order Following Bench Trial [Doc. 63], hereby files its Post-Trial Brief.

## INTRODUCTION

As detailed in the Order Following Bench Trial [Doc. 63](the "Order"), an order of specific performance of a land sale contract is appropriate only when "1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *Boardwalk at Daytona Development, LLC v. Paspalakis*, 220 So. 3d, 457, 461 (Fla. 5th DCA 2016); *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005) [Doc. 63, pp. 7-8]. This Court has found that Plaintiff has satisfied the first factor—that is, its entitlement to specific performance [Doc. 63, p.13] and third factor, that justice would require specific

performance [Doc. 63, p.15]. The Court found that Plaintiff satisfied these elements of its claim by "clear, definite, and certain" proof [Doc. 63, p.8, n.2].

In the Order, the Court required the parties to file a brief addressing the second factor, that there is no adequate remedy at law, specifically identifying three (3) issues: (1) whether an adequate remedy at law was available to Plaintiff; (2) how a seller can show that no adequate remedy at law is available; and (3) whether Plaintiff has, in fact, shown that no adequate remedy at law is available? In response to those questions, and as detailed further below, Plaintiff rephrases those issues, based on the evidence and findings of fact in this case, as: (1) did Plaintiff have an adequate remedy at law in the form of compensatory damages; (2) does the liquidated damages provision under the Contract preclude the granting of equitable relief in the form of specific performance; and (3) was the liquidated damages available under the Contract an adequate remedy at law to preclude specific performance? In response to those questions, Plaintiff states as follows:

## **ARGUMENT**

I.  **Did Plaintiff have an adequate remedy at law in the form of compensatory damages?**

a.  **Relevant factual findings.**

There was no dispute that the Plaintiff and Defendant, David J. Disiere ("Defendant" or "Disiere"), entered into the Contract for the sale and purchase of Lot 8, Stallworth Preserve [Doc. 63, p. 9]. Further, the Contract itself was admitted

into evidence as Exhibit 2 [Doc. 59-2, pp.3-10].  The Contract contained a "Default and Dispute Resolution" clause in section 16 that included the following language in the event of a Buyer Default:

> **Buyer Default**: If Buyer fails, neglects, or refuses to perform Buyer's obligations under this Contract, including payment of deposit(s), within the time(s) specified, Seller may elect to recover and retain the deposit(s), paid and agreed to be paid, for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Seller and Buyer will be relieved from all further obligations under this Contract; or Seller, at Seller's option, may proceed in equity to enforce Seller's rights under this Contract.

[Doc. 59-2, p. 8, lines 279-284].

Therefore, upon a Buyer's Default, the Seller, Plaintiff here, had two (2) options: (1) it could retain the deposit(s) as agreed upon liquidated damages or (2) it could proceed in equity to enforce its rights under the Contract.  The Court found that Defendant defaulted under the Contract by failing to close on the Contract, which was an essential obligation under the Contract [Doc. 63, p. 9].  Additionally, the Court found that Contract permits specific performance, which is an equitable remedy, citing *North Fla. Mango, LP v. LLS Holdings, LLC*, 375 So. 3d 906, 913 (Fla. 4th DCA 2023)[Doc. 63, p. 10].

### b.    What is an adequate remedy at law?

An adequate remedy at law has been defined as a remedy that is plain, certain, prompt, speedy, sufficient, complete, practical, and efficient in attaining the ends of

justice.  *See Liza Danielle, Inc. v. Jamko, Inc.*, 408 So. 2d 735, 738 (Fla. 3d DCA 1982)("On the other hand, however, it has been said that 'in order to preclude pursuit of equitable remedies an available legal remedy must be plain, certain, prompt, sufficient, complete, practical, and efficient in attaining the ends of justice.' 2*9 Fla. Jur. 2d, Injunctions §18.*").  *See also, Citizens v. So. Nat. Bank v. Taylor*, 191 So. 2d 866, 867 (Fla. 1st DCA 1966)("The mere existence of a legal remedy does not prevent a suit in equity unless the legal remedy be plain, certain, prompt, speedy, sufficient, full and complete, practical and efficient in attaining the ends of justice.").

Further, "[t]he existence and adequacy of a legal remedy sufficient to preclude equitable relief is determined by the court." *22 Fla. Jur. Equity §16*, citing *Hart v. Kapnias*, 157 Fla. 846, 27 So. 3d 145 (1946).  "The rule that equity will not function when there is an adequate legal remedy undoubtedly controls the clear-cut, unequivocal case, but in borderline cases, the court has broad discretion in choosing between forums." *22 Fla. Jur. Equity §16*, citing *Van Sickler v. White*, 183 So. 2d 279 (Fla. 2d DCA 1966) and *Ponce v. Demos*, 159 Fla. 117, 31, So. 3d 58 (1947). The test for whether a legal remedy is adequate was stated by the Florida Supreme Court in *Ponce* as:

> …the test of whether law or equity affords the most adequate remedy may be revealed by the answer to the question, which remedy will afford the most expeditious relief to the person wronged…
> So, the rule that equity will not function when there is an adequate remedy, undoubtedly controls the clear-cut unequivocal case, but in borderline cases like this, the chancellor has a broad discretion in

choosing between forums.  In doing so he is not to be so much concerned with the refinements in pleading as he is with adopting the forum that will give aid to the party wronged.  If the remedy at law is not as sensitive to the prompt administration of justice as the remedy at equity, then the latter should be adopted.

*Ponce*, 159 Fla. at 118.

> c.    **What is an adequate remedy at law in specific performance actions**?

In Florida caselaw regarding specific performance claims, an adequate remedy at law has been equated to the ability of the plaintiff to seek compensatory, monetary damages in action at law.  Florida caselaw appears well-settled that "[s]pecific performance is an appropriate remedy only when there is no adequate remedy at law, and a party that has an adequate remedy at law is not entitled to specific performance."  *DiMauro v. Martin*, 359 So. 3d 3, 9 (Fla. 4th DCA 2023) citing *Vagabond Travel and Tours, Inc. v. Universal Inns of Am., Inc.*, 440 So. 2d 482, 483 (Fla. 2d DCA 1983).  However, in *DiMauro*, the Florida Fourth DCA equated an adequate remedy at law to the ability to seek compensatory damages in an action at law, specifically stating:

> Specific performance is available only where, under the circumstances of a particular case, ***an action at law for compensatory damages for the defendant's breach of contract*** by virtue of his or her failure to carry out the agreement would be inadequate to afford complete justice between the parties.  *See Bird Lakes Dev. Corp. v. Meruelo*, 626 So. 2d 234, 238 (Fla. 3d DCA 1993).  This court has held that ***compensatory damages are an adequate remedy at law*** and can preclude specific performance even in cases involving land sale contracts.  *See Hiles v. Auto Bahn Fed'n, Inc.*, 498 So. 2d 997, 999 (Fla. 4th DCA 1986);

*Wolofsky v. Behrman*, 454 So. 2d 614, 615 (Fla. 4th DCA 1984)(awarding damages in a land-sale contract instead of specific performance).

[***Emphasis added***].  This reasoning that compensatory, monetary damages would preclude specific performance is similar to the reasoning in injunction actions, another form of equitable relief, here it is well established that the ability to obtain a money judgment for a breach of contract is an adequate remedy at law.  *See B.G.H. Ins. Syndicate, Inc. v. Presidential Fire & Casualty Co*., 549 So. 2d 197, 198 (Fla. 3d DCA 1989)("Irreparable harm and lack on an adequate remedy at law are both prerequisites to injunctive relief.  For injunctive relief purposes, irreparable harm is not established where the potential loss can be adequately compensated by a monetary award.  In the instant case, appellees' ability to obtain a money judgment against BGH should a breach of contract be proven, is an adequate remedy at law." (*Internal citations omitted*)).

In the instant action, Plaintiff was precluded from seeking compensatory damages in an action at law by the express language of Section 16 of the Contract, which only allowed Plaintiff the right to retain the deposits as liquidated damages or to seek equitable relief.  *See Waters v. Key Colony East, Inc*., 345 So. 2d 367, 367 (Fla. 3d DCA 1977)("A party to a contract, who agrees to accept a sum as liquidated damages, cannot sue for actual damages.").

Further, the remedy provision in the subject Contract is distinguishable to the provision in *DiMauro,* or the case cited therein, where the Florida Fourth DCA stated "[h]ere, the operating agreement does not limit the parties' remedies. As such, DiMauro has an adequate remedy at law in money damages for breach of contract." *DiMauro*, 359 So. 3d at 9. *See also, Vagabond Travel & Tours, Inc*., 440 So. 2d at 483("Vagabond had an adequate remedy at law via an action for compensatory damages."), *Hiles*, 498 So. 2d at 998 ("this alleged loss of money from a corporate bank account does not constitute irreparable harm because the loss can be compensated for by money damages."), and *Bird Lakes Dev. Corp*., 626 So. 3d at 238 ("we conclude the trial court was correct in refusing to grant specific performance, an equitable remedy, where *Meruelo* was adequately compensated for the breach by damages at law, including loss of bargain damages for all the sites that were subject of the contract.").

Therefore, based on the reasoning in *DiMauro*, and the cases cited therein, Plaintiff did not have an available remedy at law as it was precluded from seeking compensatory damages in an action at law. The only monetary damages available to Plaintiff was to retain the deposit in full settlement of any claims.

**II.    Does the Contract's default provision allowing for the retention of deposits preclude the granting of equitable relief in the form of specific performance?**

As detailed prior, Section 16 provided two (2) options upon the Buyer's default: (1) retention of deposits as liquidated damages or (2) seeking equitable relief to enforce the contract [Doc. 59-2, p. 8, lines 279-284].    Florida courts have previously held that such a default provision is enforceable.  *See Shaw v. Newham*, 376 So. 3d 97, 99 (Fla. 3d DCA 2023):

> In this case, the seller's argument is flawed because, unlike the contract in *Lefemine[1]*, the contract at issue does not provide for a remedy to the seller to sue for actual damages.  Rather, the seller is only contractually permitted to sue for specific performance or to retain the buyer's deposit.  *See Mineo v. Lakeside Vill. of Davie, LLC*, 983 So. 2d 20, 22 (Fla. 4th DCA 2008)(holding that a default clause that allows the nondefaulting party to retain the deposit as liquidated damages or sue for specific performance is enforceable because the damages have been agreed upon in advance; the seller can seek specific performance at a purchase price that is certain or accept the buyer's deposit as stipulated damages).

Further, "[s]pecific performance or an injunction may be granted to enforce a duty even though there is a provision for liquidated damages for breach of that duty." *Restatement (Second) of Contracts §361*.  In the Comment to §361, it states the rationale as:

> A contract provision for payment of a sum of money as damages may not afford an adequate remedy even though it is valid as one for liquidated damages and not a penalty (§356).  Merely by providing for liquidated damages, the parties are not taken to have fixed a price to be

---

[1] *Lefemine v. Baron*, 573 So. 2d 326 (Fla. 1991).

paid for the privilege not to perform. The same uncertainty as to the loss caused that argues for the enforceability of the provision may also argue for the inadequacy of the remedy that it provides. Such a provision does not, therefore, preclude the granting of specific performance or an injunction if that relief would otherwise be granted. If the provision is unenforceable as one for a penalty, the same result follows, but because of the ineffectiveness of the clause rather than the operation of the rule here stated.

*Id*. *See also, Bradely v. Health Coalition*, 687 So. 2d 329, 332 (Fla. 3d DCA 1997)("Bradley urges that since the parties have agreed on a liquidated damages clause, it follows that there is an adequate remedy at law and that the request for an injunction must be denied. We reject this argument and follow section 361 of the *Restatement (Second) of Contracts*.").

The undersigned is aware of *Acheson v. Smith's, Inc*., 110 Fla. 240, 243 (Fla. 1933) wherein the Florida Supreme Court stated that "equity would not enforce the contract since the parties themselves provide for liquidated damages in the event of a breach thus giving an adequate remedy at law and hence a Court of Equity would not interfere." However, the *Acheson* court did not cite any caselaw or authority for that statement and the case itself dealt with whether a broker was entitled to recover a broker's commission for the sale of realty. Therefore, Plaintiff asserts that the statement in Acheson is merely dicta and is not binding precedent.

Since *Acheson*, Florida courts have routinely allowed for equitable actions for specific performance of a real estate contract in situations where a liquidated damages provision also was present in the contract as an alternative remedy. *See*

*Shaw,* 376 So. 3d at 99("Rather, the seller is only contractually permitted to sue for specific performance or to retain the buyer's deposit."); *see also, Bilow v. Benoit*, 519 So. 2d 1114, 1117 (Fla. 1st DCA 1988)(finding the trial court erred in denying specific performance where the default provision in the contract "gave Bilow the alternative right to accept the deposit as liquidated damages or to enforce the contract in an action for specific performance…"); *see also, Pakalosi v. CFC Pasadena Golf, LLC*, 42 So. 3d 869, 870 (Fla. 2d DCA 2010)(reversing an order dismissing the second amended complaint and remanding for further proceedings where a seller sought specific performance of a real estate contract that included a default provision that stated "[i]f Buyer fails to perform this Contract…Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance."). *Accord, Dillard Homes, Inc. v. Carroll*, 152 So. 2d 738, 740 (Fla. 3d DCA 1963)("a seller of land will be denied the remedy of specific performance if the contract contains a provision for liquidated damages *and the language discloses that the parties intended to limit the seller to this remedy in the event the purchaser defaulted in his performance*.")(*language emphasized in the original*).

Therefore, based on the plain and unambiguous language of the Contract, Plaintiff was not precluded from seeking the equitable remedy of specific

performance just because the retention of deposits as liquidated damages was also an available remedy under Section 16 of the Contract.

## III.    Are the liquidated damages available under the Contract an adequate remedy at law to preclude specific performance?

### a.    Since land is unique, money damages are not an adequate remedy at law.

As detailed above, the ability to sue for monetary damages at law was not available to Plaintiff pursuant to the express terms of the contract that limited its remedies upon the Buyer's (Defendant's) breach to retention of the deposits as liquidated damages or to seek equitable remedies.  Thus, the only monetary damages here are the liquidated damages in the form of the contract deposits.  *Arguendo*, that monetary damages were available to Plaintiff, Florida case law dictates that monetary damages are an inadequate remedy given the unique nature of real property.

Plaintiff argued at trial that the retention of the deposit was not an adequate remedy at law given that real property is unique, citing to *Henry v. Ecker*, 415 So. 3d 137 (Fla. 5th DCA 1982).(Doc. 62, Vol. II, p. 396, ln. 14 to p. 397, ln. 8)[2].  In *Henry*, the Florida Fifth DCA stated that:

---

[2] References to the Transcript of Bench Trial Proceedings Before the Honorable Mark E. Walker, United States Chief District Judge will refer to the Volume number, the page number and line numbers contained in the transcripts.  For example, a reference to testimony found in Volume II at page 396 line 14 to page 397, line 8 will be cited as (Vol. II, p. 396, ln. 14 to p. 397, ln. 8).

> Since all land is considered unique, money damages to a contract
> purchaser of lands is an inadequate remedy at law. Therefore, specific
> performance of contracts for the sale and purchase of real property is
> generally granted as a matter of right where their terms are fair, certain,
> and definite and they have been entered into without misunderstanding
> or misrepresentation.

*Henry*, 415 So. 3d at 140. In *Bilow v. Benoit*, 519 So. 2d 1114, 1117, n.1 (Fla. 1st

DCA 1988), the Florida First DCA cited Henry, stating "[b]ecause real property is

unique, a seller of real property is entitled to seek specific performance of the

contract for sale." Further, the unique nature of land was also discussed in *Bell v.*

*Alsip*, 435 So. 840, 842 (Fla. 4th DCA 1983), wherein the Florida Fourth DCA

stated:

> It having been determined that the buyers breached the contract, the
> remaining issue is whether the sellers were entitled to specific
> performance. They clearly have such right. Real estate is unique.
> Ownership of real estate is at the same time an asset and a liability.
> Money damages upon breach of a purchase and sale agreement
> adequately compensates neither a seller, burdened with ownership, nor
> a buyer, deprived of ownership and possession. Specific performance
> is uniquely capable of rectifying the breach of such a contract.

The Eleventh Circuit has approvingly recognized the unique nature of real

estate as well as a seller's ability to seek specific performance in *Occidental Chem.*

*Corp. v. Bullard*, 995 F.2d 1046, 1048 (11th Cir. 1993), wherein it favorably cited

*Henry* and *Bell*, stating:

> On the other hand, the same principles of law that authorize the
> equitable remedy of specific performance recognize the unique value
> an individual parcel may have for the buyer. *E.g., Henry v. Ecker*, 415
> So. 2d 137, 140 (Fla.Dist.Ct.App. 1982), *pet'n for review denied*, 429

So. 2d 5 (Fla. 1983).   It is precisely because such values are
unmeasurable in dollar terms that court is authorized to require delivery
of title rather than payment of money damages.  *See George Vining &
Sons v. Jones*, 498 So. 2d 695, 697 (Fla.Dist.Ct.App. 1986); *cf. Bell v.
Alsip*, 435 So. 2d 840, 842 (Fla.Dist.Ct.App.)(holding that seller of land
may obtain specific performance because "ownership of real estate is
at the same time an asset and a liability"), *pet'n for review dismissed*,
441 So. 2d 631 (Fla. 1983).

In the instant action, there was competent, substantial evidence introduced

regarding the uniqueness of the subject Property.  The Defendant himself testified as

to the following features of Lot 8 and the Stallworth Preserve neighborhood:

-Lot 8 was the last gulf-front lot in the neighborhood (Doc. 60, Vol. IA, p.39,

ln. 10-12);

-Stallworth Preserve is a gated neighborhood (Doc. 60, Vol. IA, p.39, lin. 17-

18);

-Stallworth Preserve is a non-rental neighborhood (Doc. 60, Vol IA, p. 39, ln.

19-20);

-The street on which Lot 8 is located ends a state park (Doc. 60, Vol. IA, p.

41, ln.9-12);

-The Defendant owns a three-story, 6,600 square foot house for his family's

personal use that is one lot away from Lot 8 (Doc. 60, Vol. IA, p., 37, ln. 17-22, p.

38, ln. 2-6, p. 41, ln. 3-6).

A picture of Lot 8 and the Defendant's current property in Stallworth Preserve [Doc.

59-3, p. 105) was shown to Defendant, who identified his house and its proximity to

Lot 8 on the picture.  The picture shows the location of Lot 8 on the Gulf of Mexico, across the street from a dune lake and in close proximity to Topsail State Park.

Lot 8 also came with a set of building plans that had been approved by the homeowners' association for Stallworth Preserve (Doc. 59-2, pp. 158-189).  The Plaintiff's representative, Marc Jones, testified similarly to Defendant that the Property was unique stating:

> There's several things about it that we really liked, gated community.  I (sic) was at the end of the street.  It's obviously beachfront.  It's a fairly large lot relative to the other lots we had looked at.  It's next to a state park, which makes it pretty hard to access, so it was a very private beach.

(Doc. 61, Vol. IB, p. 143, ln. 20-24).

John D'Amico, also testified at trial about the uniqueness of Lot 8, echoing the same characteristics that both Defendant and Marc Jones testified to including the lot being 83 feet wide, gulf-front, in a gated, nonrental community, offering views of the state park, coastal dune lake, and the Gulf of Mexico. (Doc. 61, Vol IB, p. 235, ln. 9-16).  D'Amico further testified that the building plans for the lot were done by a Matthew Savoie, a well-known architect in South Walton County (Doc. 61, Vol IB, p.235, ln. 17 to p. 236, ln. 1).

In denying the Defendant's Rule 52 motion, this Court found the Property was unique, specifically stating:

> I'm allowed, as any fact finder is, to – or as the Court in looking at the evidence, I'm allowed to rely on reasonable inferences, and all the

reasonable inferences taken from the evidence before this Court is that you had an incredibly expensive piece of property that would be expensive to finance, to secure. It would be expensive to put anything on it. There would be – by virtue of those numbers and that undisputed testimony, there would be a very small number of people or entities that would acquire such a piece of property. In that sense it was unique. It was on the market. There were no offers.

For that reason, I find that plaintiff has come forward and met its burden establishing there was no adequate remedy at law; therefore, deny the Rule 52 motion.

(Doc. 61, Vo1. II, p. 408, ln. 11-24).

Therefore, the uniqueness of the Property was established by competent, substantial evidence that allows for the remedy of specific performance.

### b.    Is the $75,000.00 deposit under this Contract an adequate remedy at law given the unique nature of this Property?

"It is well settled that in Florida the parties to contract may stipulate in advance to an amount to be paid or retained as liquidated damages in the event of a breach." *Lefemine v. Baron*, 573 So. 2d 326, 328 (Fla. 1991). Further, the Florida Supreme Court long ago in *Hyman v. Cohen*, 73, So. 2d 393 (Fla. 1954) established a test as to when a liquidated damages provision will be upheld and not stricken as a penalty clause. The two-part test was detailed in *Lefemine*, 573 So. 3d at 328 as:

First, the damages consequent upon a breach must not be readily ascertainable. Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages.

15

In the instant case, Section 16 of the Contract provided that in the event of a Buyer's Default, "Seller may elect to recover and retain the deposit(s), paid and agreed to be paid, for the account of Seller as agreed upon liquidated damages." [Doc. 59-2, p. 8, lines 280-281]. As detailed in the Contract, the sales price for Lot 8 was $7,375,000.00 [Doc. 59-2, p. 3, line 14] and the initial deposit was $50,000.00 [Doc. 59-2, p.3, line 21-24]. The parties agreed to extend the closing date of the Contract to August 15, 2022, and increase the deposit to $75,000.00 via the Extension Addendum to Contract [Doc. 59-2, p. 20]. Therefore, the total deposits in the instant case were $75,000.00, which equates to only 1.016949% of the $7,375,000.00 purchase price.

Therefore, on the loss of the $7,375,000.00 sale due to the Defendant's default by not proceeding to the closing, Plaintiff had a choice to receive barely one percent (1%) of the sales price as liquidated damages or to pursue specific performance through equity. Based on the sales price of the Contract and the deposits made under the contract, the amount of liquidated damages seems disproportionate to any damages that might reasonably be expected to follow from a breach.

Regardless, during the bench trial, competent, substantial evidence was introduced to show that the liquidated damages under the Contract would not adequately compensate the Plaintiff in this action. The unrefuted evidence was presented to show that after Defendant indicated that he would not go through with

the purchase of the Property, Plaintiff continually listed the Property for sale. Plaintiff's real estate agent, John D'Amico testified that Property was continuously listed for sale since the August 15, 2022, contract closing date and in that time, only two offers were received, one for $6,250,000.00 and another for $5,250,000.00 (Doc. 60, Vol. IB, p. 259, ln. 2-22). In response to a question by the Court, Mr. D'Amico testified that the post-2022 the market values up and down Hwy 30A "have flattened if not declined." (Doc. 60, Vol. IB, p. 239, ln. 7-18). In follow up questions by Plaintiff's counsel, Mr. D'Amico testified that in the summer of 2022, the number of transactions and demand for properties slowed, which effected prices (Doc. 60, Vo1. IB, p. 239, ln. 21 to p. 240, ln. 8). Mr. D'Amico also testified that it was his practice to reach out to other prospects or their realtors who had previously shown interest in the Property after a sale does not go through, though he couldn't recall if he did so in this instance (Doc. 60, Vol. IB, p. 273, ln. 1-14).

Marc Jones, the manager of Plaintiff testified similarly regarding how long the Property has been listed for sale and that only two (2) offers had been received post-breach (Doc. 60, Vol. IB, p. 157, ln. 1-25). Mr. Jones also testified that due to the Property being listed and not receiving any offers near the asking price, the liquidated damages, in his perspective, would not make him whole or be adequate (Doc. 60, Vol. IB, p. 158, ln. 11-16).

The Defendant even argued that Property was even relisted for sale prior to the August 15, 2022, closing date by referencing Exhibit 25 at trial (see Doc. 59-3, p. 4), which showed a price history for the Property.  In the Order Following Bench Trial, this Court found that Plaintiff made a good-faith effort to sell the Property after Defendant's failure to close and "found Plaintiff's testimony on this point to be credible.  Plaintiff left the Property on the market, tried to sell the Property, and would have entertained offers, but Plaintiff received only two offers on the Property. Both were for at least one million dollars less than the $7,375,000 set out in the Contract—namely, $6,250,000 and $5,250,000." [Doc. 63, p. 7].

Plaintiff contends that the unrefuted testimony as to the only two (2) offers received for the Property post-Defendant's breach, that this Court found to be credible, shows that there are no willing purchasers for the Property near the $7,375,000 Contract price and therefore the Plaintiff is not adequately compensated by retention of the deposits, as it is well settled in Florida that fair market value is "the amount a purchaser willing but not obligated to buy, would pay to one willing but not obliged to sell." *Walter v. Schuler*, 176 So. 2d 81, 85-86 (Fla. 1965)(internal quotation marks omitted).  As this Court previously found, the Property's appraisal value, standing alone, does not dictate the Property's fair market value at closing [Doc. 63, p. 6].

Defendant's counsel tried to argue in his closing argument that there was zero evidence introduced to show Plaintiff would be burdened by continuing to own the Property.  When pressed by the Court to cite a single case that stands for the proposition that the choice of specific performance is eliminated unless there is something unique creating a hardship, Defendant was not able to identify such a case (Doc. 62, Vol. II, p.477, ln. 2 to p. 479, ln. 12).  The undersigned, in preparing this brief, has not been able to find such a case either.

Defendant also argued that the only way that Plaintiff could establish the fair market value of the Property is through competent expert testimony of an appraiser and no such testimony was elicited (Doc. 62, Vol II, p. 375, ln. 14-18).  Defendant argues that this is important as to the lack of an adequate remedy at law analysis as Plaintiff plead that the fair market value of the Property had declined by more than $75,000 by the time of the closing date on August 15, 2022 (Doc. 62, Vol. II, p. 374, ln. 21 to p. 375, ln. 3).  Defendant further contends that Florida is a fact pleading jurisdiction and not a notice pleading jurisdiction (Doc. 62, Vol II, p. 403, ln. 8-9).

As argued by Plaintiff's counsel, in response, this case was removed to Federal Court by Defendant and Federal Courts are notice pleadings jurisdictions where only a short plain statement of the claim that a plaintiff is entitled to relief is required Fed. R. Civ. P. 8(a)(2).

As to the argument regarding a property appraiser's testimony, the undersigned was not able to locate any cases regarding specific performance that required the testimony of an appraiser. The closest case that the undersigned could find was *Port Largo Club, Inc. v. Warren*, 476 So. 2d 1330 (Fla. 3d DCA 1985). In Port Largo Club, David Warren and Zanita Thomas entered into purchase agreements with Port Largo Club to purchase time-share units and each made a $300 deposit. The purchase agreements provided that "seller's sole liability in the event of default shall be for the refund of all monies theretofore paid by Purchaser". *Id*. at 1332. Port Largo Club later refused to accept Warren and Thomas' payments of their closing amounts on the ground they had failed to close by July 1, 1981. *Id*. Despite the limitation of liability in the purchase agreement, Warren and Thomas sued for specific performance and breach of contract seeing damages equal to the difference between the contract price and the fair market value of the time share units at the time of breach. The only testimony regarding fair market value was regarding the asking price of the time share units as found in Port Largo Club documents. *Id*. The trial court entered judgment in favor of Warren and Thomas and denied specific performance since there was some suggestion that the time share units had been sold. *Id*. The Florida Third DCA reversed the damages award and remanded finding that there was no competent evidence that the asking prices represented the fair market

value and stated that "[w]here fair market value is at issue, expert testimony is necessary to prove the value thereof." *Id*. at 1334.

The *Port Largo Club* case is distinguishable for a couple of reasons. Initially, the fair market value was trying to be established only based on asking prices for the property. As this Court most eloquently stated during the bench trial, in quoting Gone with the Wind, "Asking ain't getting." (Doc. 62, Vol. II, p. 472, ln. 10-11). In the instant action, the unrefuted, credible testimony was regarding actual offers made to purchase the Property, not just listing prices. Second, the *Port Largo Club* case does not say the testimony must be from an appraiser. Third, the fair market value was necessary to determine and award actual monetary damages, as opposed to granting specific performance of a contract.

The interesting takeaway from *Port Largo Club* is that the Florida Third DCA found the stipulated damages in the contract (i.e., the return of the purchaser's deposit) actually rendered the seller's obligations illusory and would permit it to breach the purchase agreements with impunity. *Id*. at 1333. In doing so, the court cited *Ocean Dunes of Hutchison Island Development Corp. v. Colangelo*, 463 So. 2d 437 (Fla. 4th DCA 1985) amongst other cases. In *Colangelo*, the Florida Fourth DCA affirmed a grant of specific performance despite a contract that had a sole remedy of refunding a purchaser's deposit. The Florida Fourth DCA quoted Black v. Frank, 176 So. 2d 113 (Fla. 1st DCA 1965) that "[p]arties may stipulate by contract

what the consequences of a breach shall be and such stipulation, *if reasonable*, is controlling and excludes other consequences." The *Colangelo* and *Port Largo Club* courts found that limiting the remedy to return of a deposit was not reasonable under the circumstances of those cases.

Here, Plaintiff is not suggesting that the liquidated damages provision should be disregarded to allow an action for monetary damages. Instead, Plaintiff is arguing that the liquidated damages under the Contract are not reasonable to adequately compensate Plaintiff due to the Defendant's breach.

Again, it is well-established in Florida that equity will not function in clear-cut cases where there is an adequate remedy at law, but in borderline cases, the Court has broad discretion in allowing equity. *Ponce*, 159 Fla. at 117, *Van Sickler*, 183 So. 2d at 280. This is not a clear-cut case where the market was stable or improving and Plaintiff received numerous offers at or above the contract price that would make retention of the $75,000 deposit an adequate or reasonable remedy. *See San Francisco Distrib. Ctr., LLC v. Stonemason Partners*, LP, 183 So. 3d 291 (Fla. 3d DCA 2014)(affirming the award of $400,000 deposit to a seller even though the seller was able to subsequently sell the property to another buyer for $200,000 more than the original, defaulted contract price). *See also, Hot Developers, Inc. v. Willow Lake Estates, Inc*., 950 So. 2d 537 (Fla. 4th DCA 2007)(affirming summary judgment on behalf of a seller seeking to keep the deposit under a forfeiture clause

even though the seller sold the property to a subsequent buyer for $100,000 more than the defaulting buyer agreed to pay under the contract).

Instead, the Court should grant specific performance finding that Plaintiff lacked an adequate remedy at law as the $75,000 deposit would not adequately compensate Plaintiff for Defendant's breach.

IV.    **Conclusion**

Based on the foregoing, pursuant to the evidence induced at the bench trial, the Plaintiff should be awarded the remedy of specific performance under the Contract. The Court has previously held that Plaintiff has satisfied the first element necessary for a decree of specific performance, that Plaintiff is clearly entitled to it, as well as the third element, that the Court believes that justice requires it. As to the second element, that Plaintiff has no adequate remedy at law, the case law and authorities are clear that specific performance will not be afforded if an adequate remedy at law exists.

While Florida caselaw has many cases where specific performance of contracts was denied where actions at law for monetary damages were available (*see DiMauro, Bird Lakes, Vagabond Travel,* and *Hiles*), Plaintiff was not afforded that remedy under the Contract. Instead, the Plaintiff's remedies for Defendant's breach were limited to a retention of the $75,000 deposit or an equitable action to enforce

the contract. The substantial, competent evidence shows that the $75,000 deposit does not adequately compensate Plaintiff for its loss of the sale as the property is a unique, high-end, gulf-front property that has a limited number of potential buyers.

As such, Plaintiff shown that it lacked an adequate remedy at law to satisfy the second prong. Therefore, judgment in favor of Plaintiff for a decree of specific performance of the Contract should be entered.

Respectfully submitted,

DUNLAP & SHIPMAN, P.A.
/s/ Michael J. Henry
GARY A. SHIPMAN (FBN 593435)
MICHAEL J. HENRY (FBN 0069044)
2063 S. County Hwy. 395
Santa Rosa Beach, FL 32459
Telephone: (850) 231-3315
Facsimile: (850) 231-5816
gary@dunlapshipman.com
michael@dunlapshipman.com
carrie@dunlapshipman.com
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH RULE 7.1(F)

I HEREBY CERTIFY that this Brief and incorporated Memorandum of Law contains 6,048 words and is in compliance with Rule 7.1 (F).

DUNLAP & SHIPMAN, P.A.
/s/ Michael J. Henry
Michael J. Henry (FBN 0069044)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of July 2024, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system.

DUNLAP & SHIPMAN, P.A.
/s/ Michael J. Henry
Michael J. Henry (FBN 0069044)