UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

ORANGE DESTIN PROPERTIES,    CASE NO. 3:23-cv-00424
L.L.C.,

    Plaintiff,

vs.

DAVID J. DISIERE,

    Defendant.

_____/

## DEFENDANT'S POST-TRIAL BRIEF

Defendant David J. Disiere ("Defendant"), by and through the undersigned counsel, pursuant to the Order Following Bench Trial ("Order") [D.E. 63], hereby files this post-trial brief.

## INTRODUCTION

It was Plaintiff's burden to plead and prove three elements to obtain specific performance: (1) clear entitlement to specific performance, which incorporates the elements of breach of contract ("Breach Element"); (2) lack of adequate legal remedy ("Adequacy Element"); and justice requires specific performance ("Justice Element"). *See Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005).

The Court has ordered supplemental briefing on the Adequacy Element. The issues framed by the Court are "how a seller can show that no adequate remedy at

law is available and whether Plaintiff has, in fact, shown that no adequate remedy at law is available." Order at 17.[1] Respectfully, Defendant takes issue with the premise of the first question to the extent it is untethered to Plaintiff's Complaint [D.E. 1-1] and Plaintiff's pre-trial disclosures. [D.E. 41].

Triable issues must be raised by the pleadings or tried by consent. As to the pleadings, Plaintiff's Complaint pleaded a single, specific basis to show the absence of an adequate legal remedy in its Complaint. Defendant has never argued that Plaintiff failed to *allege* a basis for lack of an adequate legal remedy. However, Plaintiff failed to meet its burden to *prove* its single allegation for the Adequacy Element in the Complaint. Judgment must be entered in Defendant's favor as a result.

Considering any unpleaded basis for the Adequacy Element requires the Court to determine whether the particular unpleaded basis was tried by consent. Although the ground(s) Plaintiff now advances or might advance are hard to pin down, Defendant did not consent to any unpleaded basis for the Adequacy Element at trial. Therefore, the Court may not look to unpleaded issues for the Adequacy Element of Plaintiff's claim.

---

[1] The Court also gave the parties the option to use the briefs to provide additional support to positions already taken. *See* Trial Tr. at 526:24–527:6. The transcripts for the bench trial are on the docket at Docket Entries 60, 61, and 62. Because the transcripts are continuously paginated, references to the transcripts are cited as Trial Tr. __.

## ARGUMENT

## I.  PLAINTIFF FAILED TO PROVE THE SOLE ALLEGATION FOR THE ADEQUACY ELEMENT IN ITS COMPLAINT.

It is axiomatic that issues for trial are framed by the pleadings. *See Kicklighter v. New York Life Ins. Co.*, 157 F.2d 783, 785 (5th Cir. 1946) ("At all times the burden was on the plaintiff to prove the issues raised by the pleadings."). With respect to the Adequacy Element, Plaintiff's Complaint alleges: "As of the scheduled closing date of August 15, 2022, the Fair Market Value of the Property declined by more than Defendant's $75,000 earnest money deposit, such that the money damages would not adequately compensate Plaintiff." Compl. ¶ 22 (sometimes referenced herein as "Paragraph 22"). Accordingly, to prove that it lacks an adequate legal remedy, Plaintiff must prove that on August 15, 2022, the fair market value of the Property was less than $7,300,000.[2]

Plaintiff failed to meet its burden of proving the fair market value of the Property on August 15, 2022 was less than $7,300,000 by the preponderance of the evidence or by the heightened standard of "clear, definite, and certain" evidence.

---

[2] This is a little different then how the issue was sometimes referenced at trial and in the Court's Order. The parties and the Court sometimes referred to Plaintiff's position as whether "the liquidated damages presented an adequate remedy at law" or similar phrasing. Defendant understands this to be a shorthand for Plaintiff's allegation at Paragraph 22 of the Complaint, but not the actual test that Plaintiff must satisfy. It has also been Defendant's position that Plaintiff must prove the fair market value as of the scheduled closing date to prove its Adequacy Element, because that is precisely what it chose to plead.

Simply, no witness testified to the fair market value of the Property on August 15, 2022. Therefore, Plaintiff failed to meet its burden as to the Adequacy Element as pleaded. The Court must enter judgment in Defendant's favor.

Defendant includes the following discussion to address the Court's concerns that Defendant set forth an improperly narrow test, to wit, that a Plaintiff could only meet its burden with a qualified expert appraiser. While Defendant believes such testimony was required in *this* case, some courts have permitted the owner of real property to testify to the fair market value of its property. However, again, Plaintiff offered no such testimony from the principal of the owner, Mr. Jones.

### A. Plaintiff failed to prove the fair market value of the Property with the testimony of a qualified expert appraiser.

Though Plaintiff sought specific performance, its Adequacy Element allegation mirrored the test for damages in a claim for breach of contract to purchase real property. *Compare* Comp. ¶ 22 ("As of the scheduled closing date of August 15, 2022, the Fair Market Value of the Property declined by more than Defendant's $75,000 earnest money deposit, such that the money damages would not adequately compensate Plaintiff.") *with Buschman v. Clark*, 583 So. 2d 799, 800 (Fla. 1st DCA 1991) ("[T]he measure of damages for breach of a real estate sales contract is the difference between the contract sales price and the fair market value of the property on the date of the breach."). "Where fair market value [of real property] is at issue, expert testimony is necessary to prove the value thereof." *Port Largo Club, Inc. v.*

4

*Warren*, 476 So. 2d 1330, 1334 (Fla. 3d DCA 1985). Because Plaintiff's allegation at Paragraph 22 mirrors the test for damages, expert testimony regarding fair market value was necessary to prove Plaintiff's allegation. Plaintiff never disclosed nor proffered any such testimony—let alone the testimony of an expert - as to the fair market value of the Property on August 15, 2022.[3] Therefore, Plaintiff failed to meet its burden as to the Adequacy Element.

The Court expressed concern that testimony from a qualified expert appraiser would not be sufficient because an expert appraiser would render an opinion as to the decrease in the property's fair market value between the contract and closing. Trial Tr. 395:20–396:7. But expert appraisers regularly opine as to the fair market value of property on a date certain. *See, e.g.*, *Witchell v. Londono*, 707 So. 2d 796, 798 (Fla. 2d DCA 1998) ("The court also determined that the appraisal report was admissible, and accepted the appraiser's opinion that the mortgaged real property had a fair market value of $2,800,000.00 on the date of the foreclosure sale.").

Additionally, the Court seemed concerned about a lack comparable properties (i.e., comps) for the Property for an appraiser to consider.[4] Trial Tr. at 395:5-13,

---

[3] Counsel for defendant objected to Mr. D'Amico providing expert opinion testimony about market conditions, but the Court permitted the testimony "in the context of why he formed the valuation he did for the property." Trial Tr. 237:15-23.

[4] While the fact finder using its common sense and general knowledge may have a general idea of how an appraiser determines the fair market value of property, that

473:10-15. However, there was no testimony about the lack of comparable properties so as to make rendering an appraisal impossible. To the contrary, the record demonstrates that an appraisal *was* possible because Plaintiff had the Property appraised before putting it on the market in May 2022 which valued the Property between $7.3 and $7.4 million. Trial Tr. 175:11-15, 218:4-7. Therefore, nothing prevented Plaintiff from engaging an expert appraiser to testify as to the fair market value of the Property on August 15, 2022.

Mr. D'Amico was not disclosed as an expert nor is he an appraiser. Mr. D'Amico testified that the real estate market was strong in 2021 and the first part of 2022, Trial Tr. at 238:3-13, but around the time of the closing in this case, in the summer of 2022, the market began to decline. Trial Tr. at 239:24–240:1, 240:4-8. Mr. D'Amico testified that the decline "eventually" had an effect on the price or

---

is no substitute for the testimony of an actual appraiser, who, based on his or her professional judgment, would consider the various factors necessary to opine on the fair market value of the specific real property at issue in the case. *See Powell v. Kelly*, 223 So. 2d 305, 309 (Fla. 1969) ("The appraisal of real estate is an art, not a science. There are various methods of approach in determining the market value of real estate, each approach involving the use of various guidelines. Although the use of such guidelines may be mandatory in appraisal work, their application to various situations calls upon the exercise of judgment."). Where an appraiser testifies and there is a lack of reasonably comparable comps, the lack of comps might be a reason to impeach the expert witness on the basis for his or her fair market value of the Property on a date certain.

value of lots. Trial Tr. at 240:2-3.[5] The Court credited Mr. D'Amico's testimony that the "real estate market is in constant flux." Order at 6. Nevertheless, Mr. D'Amico did <u>not</u> testify as to the fair market value of the Property on August 15, 2022. Nor did Mr. D'Amico testify that the decline or flux in the market affected the Property on August 15, 2022. Or if it did, what effect that would have on the fair market value of the Property <u>on that date</u>.

**B. Assuming Plaintiff was permitted to meet its burden with testimony from its principal and owner as to the fair market value of the Property, Plaintiff offered no such testimony.**

The Court took issue with the idea that a qualified expert appraiser was necessary for the Plaintiff to prove the fair market value on August 15, 2022. Trial Tr. 502:18-23. Admittedly, some Florida courts permit the owner of real property to testify to the fair market value of its property. *See Tucker v. Tucker*, 966 So. 2d 25, 26 (Fla. 2d DCA 2007) ("An owner of property is generally qualified to testify about the value of his own property." (citation omitted)); *Beaty v. Gribble*, 652 So. 2d 1156, 1158 (Fla. 2d DCA 1995) ("The husband's testimony at trial was competent evidence of the value of the building because he was the owner. The wife's valuation on the financial affidavit was not competent evidence because she was not the owner of the building." (citation omitted)); *see also Buschman*, 583 So. 2d at 800 (crediting

---

[5] Further, Mr. D'Amico testified that post-2022, in 2023 and 2024, prices had flattened. Trial Tr. 239:7-18. This is not pertinent to the fair market value of the Property on August 15, 2022.

without discussion the testimony of the property owner of the fair market value on the date of the foreclosure sale). Under this paradigm, "[a] corporate officer may testify as to value of property of the corporation where, because of his management of its affairs and personal knowledge of the property, he is thereby qualified." *Harbond, Inc. v. Anderson*, 134 So. 2d 816, 819 (Fla. 2d DCA 1961). Applying this reasoning to the case at bar, Mr. Jones, as Plaintiff's sole member, could have theoretically testified to the fair market value of the Property on August 15, 2022. However, Mr. Jones did not so testify. Thus, Plaintiff failed to meet its burden to prove the fair market value of the Property as alleged under any test.

Although Mr. Jones' testified generally that he did not believe Plaintiff would be made whole if it retained the $75,000 deposit, Trial Tr. at 158:1-12, this does not satisfy Plaintiff's burden as to the Adequacy Element.[6] Mr. Jones' subjective belief as to what would make Plaintiff whole on the date of the trial is not testimony of the fair market value of the Property on August 15, 2022. Indeed, Mr. Jones' testimony regarding his subjective belief that $75,000 would not make Plaintiff whole was not connected to the fair market value of the Property on August 15, 2022. It was based on the assertion that Plaintiff had received no offer near $75,000 less than $7,375,000 for the Property, Trial Tr. at 158:14-16, which plainly included the time

---

[6] Mr. Jones' testimony was limited to his subjective belief as to the adequacy of the damages remedy, not the legal sufficiency of the remedy.

well after the August 15, 2022, as the questions about being made whole followed questions about the two offers on the Property which post-date August 15, 2022. *See* Trial Tr. at 157:20-25. In any event, Mr. Jones testified that in April of 2023 – eight (8) months after the scheduled closing - he believed the listing price of $7,375,000 still reflected the value of the Property. Trial Tr. at 190:16–191:12. Also, Mr. Jones never testified that the Property's value *ever* fell below $7,300,000. Rather, Mr. Jones testified that he would *not* have sold the Property in November of 2022 for $6,999,000.[7] Trial Tr. 177:6–8; *see id.* at 182:8–14. Mr. Jones' testimony therefore does not show that the fair market value of the Property on August 15, 2022 was less than $7,300,000. If anything, Mr. Jones' testimony that the fair market value of the Property in April of 2023 was the same as the contract price, means there is no inference to be drawn from Mr. D'Amico's testimony regarding the "declining market" affecting the Property's fair market value at the pertinent time, at least not according to the only potentially competent witness: Mr. Jones.

### C. Accepting the Court's finding from the bench as to the fair market value of the Property on August 15, 2022, Plaintiff failed to establish its Adequacy Element.

At trial, Plaintiff advanced a test for fair market value, which the Court referenced in its Order: "fair market value 'is the amount a purchaser willing but not obliged to buy, would pay to one willing but not obliged to sell.'" Order at 6 (citing

---

[7] By this date, Orange Destin had already filed suit.

*Walter v. Schuler*, 176 So. 2d 81, 85–86 (Fla. 1965)). Under this test, an arm's length transaction is evidence of fair market value. *See Baker Cnty. Med. Servs., Inc. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845 (Fla. 1st DCA 2010) ("Fair market value is the price that a willing buyer will pay and a willing seller will accept in an arm's-length transaction."). Following the close of evidence, the Court seemed to find that the fair market value of the Property on August 15, 2022 was what Defendant was willing to pay, namely $7,375,000, the contract price.[8] Trial Tr. 523:10–16. The Court seemed to believe Defendant would disagree with its application of the test, but Defendant does not disagree. The Court's finding that the fair market value of the Property on August 15, 2022 was the same as the contract price of $7,375,000 is consistent with testimony of the Property's pre-sale appraisal value of between $7.3 and $7.4 million, Trial Tr. 175:11-15, 218:4-7; Mr. Jones's testimony that he would not have accepted $6,999,000 to sell the Property in November of 2022, Trial Tr. 177:6–8; *see id.* at 182:8–14, and Mr. Jones' testimony that the listing price of $7,375,000 in April of 2023 reflected the value of the Property. Trial Tr. 190:16–191:12.

Applying the Court's fair-market-value finding to Paragraph 22 of the Complaint shows Plaintiff failed to prove its Adequacy Element. As of the scheduled

---

[8] This finding was not expressly included in the Order, though the Order referenced the Court made some findings as to the fair market value.

closing date of August 15, 2022, the fair market value of the Property was the contract price of $7,375,000, therefore the fair market value of the property did not decline by more than Defendant's $75,000 earnest money deposit. *See* Comp. ¶ 22. *Cf. Buschman*, 583 So. 2d at 800 ("In the case at bar, the sales price of the property was $59,000.00. Several months after the contract was breached, the lender foreclosed on the mortgage and received a final judgment of foreclosure. The seller testified that the fair market value of the property at the time of the foreclosure was still equal to the contract price of $59,000.00. Pursuant to *Zipper*,[9] the amount of damages proved would be zero."). Therefore, Plaintiff failed to prove the only basis for its Adequacy Element. Thus, the Court must enter judgment in Defendant's favor.

There is no basis for the Court to deviate from its fair market value finding because Plaintiff failed to come forward with competent evidence of an alternative fair market value on August 15, 2022, for the reasons discussed above. Neither Mr. Jones, as the only potentially competent witness as to fair market value of the Property, nor Mr. D'Amico – who was not an appraiser and was never disclosed as an expert on market value - testified to the Property's fair market value on August 15, 2022.

---

[9] *Zipper v. Affordable Homes, Inc.*, 461 So. 2d 988, 989 (Fla. 1st DCA 1984) ("The measure of damages is the difference between the price the buyer agreed to pay for the property and the fair market value on the date of the breach." (citation omitted)).

All told, it was Plaintiff's burden to prove the single pleaded basis for its Adequacy Element, but it failed to do so. Viewed as an absence of evidence of the fair market value of the Property on August 15, 2022; or accepting the Court's finding that the fair market value of the Property on August 15, 2022 was the contract price of $7,375,000, paired with the absence of testimony regarding an alternative fair market value of the Property on August 15, 2022 (or even that the market down turn had affected the Property by August 15, 2022), the result is the same: Plaintiff failed to prove that the fair market value of the Property on August 15, 2022 was less than $7,300,000. *See* Compl. ¶ 22. Accordingly, Plaintiff failed to prove an essential element of the specific performance claim. The Court must enter judgment in Defendant's favor and against Plaintiff.

## II. NO OTHER GROUND FOR LACK OF ADEQUATE LEGAL REMEDY WAS INCLUDED IN THE COMPLAINT OR TRIED BY CONSENT.

The only basis for finding the lack an adequate legal remedy that was included in the Complaint required Plaintiff to prove the fair market value of the Property on August 15, 2022 was less than $7,300,000; thus, the Court's consideration of any other basis for finding the lack of an adequate legal remedy necessarily implicates non-pleaded issues. "[W]hen relief is to be based on an issue not raised in the pleadings, Rule 15(b), Federal Rules of Civil Procedure, must be considered." *Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir. 1982). Pursuant to Rule 15(b): "When an

issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). "Failure to object to evidence raising issues outside of the pleadings constitutes implied consent as long as the evidence is not relevant to issues already within the pleadings." *U.S. for Use & Benefit of Seminole Sheet Metal Co. v. SCI, Inc.*, 828 F.2d 671, 677 (11th Cir. 1987) (citation omitted). On the other hand, "[t]he introduction of evidence arguably relevant to pleaded issues cannot serve to give a party fair notice that new issues are entering the case." *Diaz v. Jaguar Rest. Grp., LLC*, 627 F.3d 1212, 1215 (11th Cir. 2010) (citation omitted). "Moreover, implied consent . . . will not be found if the defendant will be prejudiced; that is, if the defendant had no notice of the new issue, if the defendant could have offered additional evidence in defense, or if the defendant in some other way was denied a fair opportunity to defend." *Cioffe*, 676 F.2d at 541–42. The Court may not enter any judgment based on issues not present in the pleadings or tried by consent. *Id.* at 541. *See also Kipu Sys., LLC v. ZenCharts, LLC*, No. 17-CV-24733, 2020 WL 9460639, at *12 (S.D. Fla. Nov. 24, 2020) ("Because the unfair competition count is based on an unpled theory of liability that Defendants did not consent to trying, Plaintiff is not entitled to judgment on this count."). The plaintiff bears the burden of establishing that an issue in its case was tried by consent. *See Technolojoy, LLC v. BHPH Consulting Servs., LLC*, No. 19-23770-CIV, 2023 WL 4763113, at *1 (S.D.

Fla. Mar. 3, 2023) ("To establish implied consent, the plaintiff must demonstrate that the defendant understood evidence had been introduced to prove the new issue, and that the new issue had been directly addressed, not merely inferentially raised by incidental evidence." (citation, alteration, and quotation marks omitted)), *aff'd*, No. 23-10874, 2024 WL 1954160 (11th Cir. May 3, 2024).

### A. Defendant did not consent to any additional, unpleaded basis for the Adequacy Element.

To explain why Defendant did not consent to trial on any unpleaded basis for the Adequacy Element, it would be helpful to discuss the issue that <u>was</u> tried by consent, namely the Justice Element. Plaintiff's Complaint is silent as to the Justice Element. Nevertheless, Defendant understood that Plaintiff would have to establish this element to prove its case. [D.E. 56 at 11–12]. Defendant expressly argued that the evidence challenged by Plaintiff was relevant to Plaintiff's unpleaded Justice Element because the Court could consider all of the facts and circumstances of the case, in deciding it. *Id.* at 7 (citing *inter alia Schuetz v. Niziolek*, 62 So. 2d 704, 706 (Fla. 1953) ("While equity will not relieve a party from a bad bargain, it will not extend its arm to enforce performance of a contract where to do so would be harsh and inequitable under all the circumstances of the case.")). And at trial, Defendants' counsel expressly agreed that the Justice Element was before the Court. *See* Trial Tr. 223:1–4 (The Court: "It's just part of the mix of, Judge, why we think equity would suggest that you not order specific performance. MR. COHEN: Yes."). *See also id.*

14

at 305:24–306:2 (recognizing Defendant would be making arguments related to the Justice Element).[10] In other words, Defendant went to trial with open eyes as to the lack of a pleaded basis for the Justice Element; agreed that the Justice Element would be an issue at trial; and agreed the Court would consider "all the circumstances of the case" when determining the Justice Element. Therefore, Defendant expressly consented to trial on the Justice Element. Accordingly, the Justice Element was "treated in all respects as if raised in" Plaintiff's Complaint. *See* Fed. R. Civ. P. 15(b)(2).

The foregoing sits in stark contrast to the Adequacy Element. Unlike the Justice Element on which the Complaint was silent, Plaintiff's Complaint included the single, specific allegation of fact as to the Adequacy Element. Compl. ¶ 22. Plaintiff proceeded to trial on its Complaint. Indeed, Plaintiff was the master of its Complaint. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021). Plaintiff was bound by the allegations in its Complaint. *See Cabriolet Porsche Audi, Inc. v. Am. Honda Motor Co.*, 773 F.2d 1193, 1202 n.3 (11th Cir. 1985) (holding trial court's finding of fact following a bench trial was clearly erroneous where it *inter alia* was contrary to a party's binding admission in the amended complaint);

---

[10] In the cited portion of the transcript, Mr. Cohen inadvertently refers to Element 1, the Breach Element, as Element 2, the Adequacy Element. The subject of the comment, waiver of the writing requirement and oral cancellation, goes to the Breach Element not the Adequacy Element.

*Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."); *see also White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("[F]actual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them.").[11] Plaintiff never amended its Complaint. And Plaintiff was obliged to prove what it pleaded at trial. *See Kicklighter*, 157 F.2d at 785.

Defendant certainly did not expressly consent to trial on any unpleaded basis for the lack of adequate legal remedy.

Nor did Defendant implicitly consent to an additional basis for the Adequacy Element. Defendant should not have to speculate as to what evidence admitted without objection Plaintiff would argue constitutes an implied waiver. However, all evidence regarding the Property and the parties' dealings was at least "arguably relevant" the Justice Element of Plaintiff's claim, *see Diaz*, 627 F.3d at 1215, which was "treated in all respects as if raised in" Plaintiff's Complaint, Fed. R. Civ. P. 15(b)(2), because the Court could consider "all the circumstances of the case" when determining the Justice Element. *See Schuetz*, 62 So. 2d at 706. Accordingly, introduction of such evidence did not give Defendant fair notice that new issues were

---

[11] That Plaintiff's Complaint was initially filed in Florida, a fact pleading jurisdiction, further bolsters the position that Plaintiff was bound to its specific allegation in Paragraph 22.

entering the case. *See Diaz*, 627 F.3d at 1215. Therefore, the admission of such evidence without objection did not constitute an implicit consent to Plaintiff advancing an unpleaded basis for the Adequacy Element.

Indeed, it is not clear to Defendant even now, the basis Plaintiff will advance to support its Adequacy Element.[12] Because Defendant is entitled to fair notice of the grounds for Plaintiff's Adequacy Element, no new ground for the Adequacy Element asserted by Plaintiff (for instance during post-evidence argument at trial or the post-trial briefs) could ever be consistent with Rule 15(b). The Court must hold Plaintiff to its Complaint and Plaintiff's choice not to prove its allegation in Paragraph 22 by failing to provide any evidence that the fair market value of the Property was less than $7,300,000 on August 15, 2022.

### B. Defendant would be prejudiced if the Court found it consented to trial on any additional issue for the Adequacy Element.

Moreover, even if Defendant somehow seemed to implicitly consent to an unpleaded basis for the Adequacy Element, which is expressly denied, *supra*, the Court should find no implied consent because Defendant is prejudiced if the Court considers an unpleaded basis for the Adequacy Element. <u>First</u>, Defendant lacked notice of the unpleaded ground under which Plaintiff will travel for its Adequacy

---

[12] Plaintiff summarized its position at during post-evidence argument at trial without reference to any fair market value. Trial Tr. 429:4-11. However, Plaintiff may seek to change its position with the post-trial briefing.

Element. Paragraph 22 was specific that the lack of adequate remedy at law turned on Plaintiff proving the fair market value of the Property on August 15, 2022. After the close of evidence, Plaintiff argued that as a result of removing the case from Florida state court, a fact-pleading jurisdiction, to federal court, a notice pleading jurisdiction, Plaintiff was no longer obliged to prove Paragraph 22 of the Complaint, but instead could flesh out some other unpleaded allegation at trial. Trial Tr. 398:24–399:12. Plaintiff is incorrect.

True, the change from a fact-pleading jurisdiction to a notice-pleading jurisdiction altered the standard by which the sufficiency of the Complaint would be determined, such that in federal court the Complaint "need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983) (explaining notice pleading). But Defendant did not argue the Complaint failed to meet the minimum requirements of notice pleading. To the contrary, the single, specific allegation at Paragraph 22 gave Defendant fair notice that Plaintiff would seek to prove the fair market value of the Property on August 15, 2022 to meet its burden as to the Adequacy Element. Pursuant to the Complaint, that was the only ground upon which the Adequacy Element rests. Paragraph 22 did <u>not</u> provide Defendant fair notice that Plaintiff would pursue some

other basis for the Adequacy Element, or what other basis it would pursue. *See Kipu Sys., LLC*, 2020 WL 9460639, at *10.

Second, had Plaintiff raised a different basis for the Adequacy Element in its Complaint, Defendant could have offered additional evidence in defense. If Defendant had notice that the claimed difficulty in selling the Property could form the basis for Plaintiff's Adequacy Element, Trial Tr. 429:4-11,[13] Defendant certainly could have subpoenaed records and communications from Mr. D'Amico and his brokers to determine what if any steps he took to sell the Property after listing it as active in August 2022. Recognizing the Court found Mr. D'Amico's testimony credible in this regard, Order at 7, Mr. D'Amico's testimony was vague. For instance, Mr. D'Amico offered testimony that it was his general practice to contact other interested parties when a property is relisted, but he could not recall whether he in fact did so in this case. Trial Tr. 173:1-14. The actual steps taken by Mr. D'Amico—or lack thereof[14]—beyond merely listing the Property could form the basis of a defense that the difficulty in selling the Property was caused by a lack of effort by Plaintiff and its agent. And with records in hand, Defendant could have

---

[13] This assumes for the sake of argument this represents Plaintiff's final position on this issue.

[14] As directed, Defendant is not taking issue with the Court's credibility finding for the purposes of this Brief. It is possible that Mr. D'Amico for whatever reason did not comport himself consistent with his general practice in instance.

offered expert testimony from a real estate agent regarding the steps Plaintiff and Mr. D'Amico in fact took to sell the Property after the Property was relisted met industry standards. Further, Defendant could have engaged an expert to opine as to the local real estate market and how it may or may not have affected the Plaintiff's claimed difficulty in selling the Property. Because Defendant could have offered additional evidence in defense with proper notice of additional grounds for the Adequacy Element, this Court must not find implied consent to such issue.

## CONCLUSION

While the law regarding how a seller could theoretically establish that it lacks an adequate legal remedy for a breach of contract to convey real property with a liquated damages provision may not be clear, this case does not turn on the Court resolving that issue in the abstract. Rather, this case turns on the well-settled principles that a plaintiff is bound to the allegations in its pleadings—even in notice pleading jurisdictions—and trial is framed by the pleadings. After having the opportunity to fully litigate the issue raised in its Complaint, Plaintiff failed to provide any competent evidence that the fair market value of the Property was less than $7,300,000 on August 15, 2022. Indeed, the Court found the fair market value of the Property was the contract price of $7,375,000 on August 15, 2022. And Plaintiff did not establish that any other basis for the Adequacy Element was tried by consent. So the Court may not consider any unpleaded basis for the Adequacy

Element here. Plaintiff failed to prove by the preponderance of the evidence, let alone by "clear, definite, and certain" evidence, that it lacks an adequately legal remedy. Accordingly, this Court must enter judgment in favor of Defendant.

### Local Rule 7.1(F) Certification

I hereby certify that the instant Brief, excluding the case style, signature block, and certificates, totals 5,265 words.

Respectfully submitted,

Jordan S. Cohen, Esquire
Florida Bar No. 551872
WICKER SMITH O'HARA
  MCCOY & FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Phone: (954) 847-4800
Fax: (954) 760-9353
E-mail:  JCohen@wickersmith.com

Ethan A. Arthur, Esquire
Florida Bar No. 119054
WICKER SMITH O'HARA
MCCOY & FORD, P.A.
100 S. Ashley Dr., Suite 1800
Tampa, FL  33602
Phone: (813) 222-3939
Fax: (813) 222-3938
E-mail:  EArthur@wickersmith.com

By: */s/ Jordan S. Cohen*
Jordan S. Cohen, Esquire
Florida Bar No. 551872

*Counsel for David J. Disiere*

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on July 26, 2024, and the foregoing document is being served this day on all counsel or parties of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Jordan S. Cohen*_____
Jordan S. Cohen, Esquire